FILED

2009 Jul-30  PM 02:52
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

ROGERS GROUP, INC.,

_____Plaintiff,

vs.                                                    CASE NO. CV-09-J-0990-NE

THE LIMESTONE COUNTY
COMMISSION OF LIMESTONE
COUNTY, ALABAMA, DAVID
SEIBERT, Chairman of the Limestone
County Commission, GARY DALY,
GERALD BARKSDALE, BILL
LATIMER, and BILL DAWS, members
of the Limestone County Commission,

Defendants.

## <u>MEMORANDUM OPINION</u>

Pending before the court is defendants' Motion to Dismiss or, in the Alternative, to Consolidate (doc. 9) and plaintiff's Response (doc. 15). Having considered all the pleadings and submissions, the court concludes that defendants' motion to dismiss is DENIED in part and GRANTED in part as set out below.

### I. Procedural History

Plaintiff filed a complaint (doc. 1) against the Limestone County Commission and individual defendants, David Seibert, Gary Daly, Gerald Barksdale, Bill Latimer, and Bill Davis, seeking damages under 42 U.S.C. § 1983 and asserting: (I) an equal

protection violation; (II) a takings claim under the United States Constitution; (III) an inverse condemnation claim under Alabama law; (IV) due process violations under the United States Constitution; (V) due process violations under the Alabama Constitution; (VI) declaratory judgment; and (VII) injunctive relief.

## II. Factual Background

Plaintiff Rogers Group, Inc. ("Rogers") is engaged in the business of mining and selling crushed stone.  Complaint at ¶ 9.  Rogers acquired an option to purchase the Limestone County quarry property on August 16, 2007.  *Id.* at ¶ 15.  In September 2007 Rogers informed members of the Limestone County Commission that it would open a quarry on the Limestone Quarry Property within 18 to 24 months.  *Id.* at ¶ 16.  Rogers received an air quality permit and a National Pollutant Discharge Elimination System permit from the Alabama Department of Environmental Management on February 10, 2009.  *Id.* at ¶ 20.  On February 16, 2009, Rogers converted its option to a lease of the Limestone Quarry Property.  *Id.* at ¶ 21.  Limestone County issued Rogers a business license to operate a quarry on the Limestone Quarry Property on February 27, 2009.  *Id.* at ¶ 22.

As part of the initial quarry operations, Rogers graded the property, stripped topsoil, stockpiled soil, extracted minerals, drilled holes to conduct blasting on the property, physically conducted blasting on the property, installed a primary crusher

on the property, sold stone from the property, and erected a sign at the entrance of the property so the public would know that it was operating a quarry there. *Id.* at ¶¶ 23-26. There were no local laws that restricted Rogers' use of the Limestone Quarry Property to any particular classification of uses when it acquired an interest in the property. *Id.* at ¶ 31.

A state senator from Limestone County introduced legislation during the 2009 Alabama Legislature regular session to prevent "new" quarries from operating in Limestone County. *Id.* at ¶ 32. The legislation consisted of four separate bills.

Senate Bill 594 states that:

> Relating to Limestone County; to regulate the establishment of new rock quarries outside the corporate limits of any municipality under certain conditions.

BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:

> Section 1.  In Limestone County, after the effective date of this act, no new rock quarry may be established nor may any existing rock quarry be relocated outside the corporate limits of any municipality within two and one-half miles of the Robotic Centers at Calhoun Community College.

> Section 2.  This act shall become effective immediately following its passage and approval by the Governor, or its otherwise becoming law.

Senate Bill 595 states that:

> Relating to Limestone County; to regulate the establishment of

new rock quarries outside the corporate limits of any municipality under certain conditions.

BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:

Section 1.  In Limestone County, after the effective date of this act, no new rock quarry may be established nor may any existing rock quarry be relocated outside the corporate limits of any municipality within two and one-half miles of a public school.

Section 2.  This act shall become effective immediately following its passage and approval by the Governor, or its otherwise becoming law.

Senate Bill 596 states that:

Relating to Limestone County; to regulate the establishment of new rock quarries outside the corporate limits of any municipality under certain conditions.

BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:

Section 1.  In Limestone County, after the effective date of this act, no new rock quarry may be established nor may any existing rock quarry be relocated outside the corporate limits of any municipality within one mile of the TVA Industrial Development Mega Site.

Section 2.  This act shall become effective immediately following its passage and approval by the Governor, or its otherwise becoming law.

Senate Bill 597 states that:

Relating to Limestone County; to regulate the establishment of new rock quarries outside the corporate limits of any municipality under certain conditions.

BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:

>Section 1.  In Limestone County, after the effective date of this act, no new rock quarry may be established nor may any existing rock quarry be relocated outside the corporate limits of any municipality within ten miles of Browns Ferry Nuclear Plant.

>Section 2.  This act shall become effective immediately following its passage and approval by the Governor, or its otherwise becoming law.

*Id.* at ¶¶ 33-36.  Senate Bills 594, 595, 596, and 597 ("quarry statutes") were passed by the Alabama legislature and enacted into law upon their signature by the governor on May 11, 2009.  *Id.* at ¶ 37.

Representatives of the Limestone County Commission contacted Rogers and informed it that the Commission would attempt to prevent Rogers from using the Limestone Quarry Property as a quarry through enforcement of the quarry statutes. *Id.* at ¶ 40.  Rogers then filed its current complaint (doc. 1) on May 20, 2009.  The day after the present lawsuit was filed, Limestone County, Alabama through its official governing body, the Limestone County Commission, filed a complaint[1] against Rogers in the Circuit Court of Limestone County alleging a violation of the quarry statutes and seeking a declaratory judgment and preliminary and permanent injunctive relief.  Defendants' Motion to Dismiss Brief at 2.  Rogers filed a notice of

---

[1] Civil Action No.: CV-2009-900090.

5

removal to federal court on May 21, 2009.  *Id.* at 2-3.  Limestone County filed a

motion seeking a remand to circuit court.  Defendants' Motion to Dismiss Brief at 3.

### III. Standard of Review

In reviewing a motion to dismiss, the court must "accept the allegations in the

complaint as true and construe them 'in the light most favorable to the plaintiff.'"

*Simmons v. Sonyika*, 394 F.3d 1335, 1338 (11th Cir. 2004) (citing *Hill v. White*, 321

F.3d 1334, 1335 (11th Cir. 2003)); *see also Jackson v. Okaloosa County, Fla.*, 21

F.3d 1531, 1534 (11th Cir. 1994) (stating that the court "must accept as true the facts

stated in the complaint and all reasonable inferences therefrom").  Furthermore,

"'[f]actual allegations must be enough to raise a right to relief above the speculative

level.'"  *Scarbrough v. Astrue,*  2009 WL 1068231, *2 (11th Cir. 2009) (citing *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929

(2007)); *see also Redland Co., Inc. v. Bank of America Corp.*, 2009 WL 1492616, *2

(11th Cir. 2009).

The Eleventh Circuit requires a heightened pleading requirement in section

1983 actions where a government employee is sued in his or her individual capacity

and may be entitled to qualified immunity.  *GJR Investments, Inc. v. County of*

*Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998); *see also Magluta v. Samples*,

256 F.3d 1282, 1284 (11th Cir. 2001) (stating that "heightened specificity is required

in civil rights actions against public officials who may be entitled to qualified immunity").

## IV. Legal Analysis

*Plaintiff Rogers Has Failed to State a Claim Against the Individual Defendants*

In addition to suing the Limestone County Commission, the plaintiff's complaint asserts all seven counts against the individual county commissioners. The plaintiff alleges that the individual commissioners have "demanded that Rogers cease its quarry operations on the Property and [have] threatened to sue Rogers even though the Limestone County quarry is not a 'new' or 'relocated' quarry." Complaint at ¶ 60. The plaintiff also states that the individual commissioners improperly applied the quarry statutes to the plaintiff with knowledge that the plaintiff had permits to operate its business. *Id.* at ¶ 39, ¶ 45.

The plaintiff's allegations against the individual commissioners fail to state a claim for which relief can be granted. The plaintiff rarely mentions the individual commissioners in the complaint, and offers no argument that the individual commissioners threatening to sue the plaintiff results in any constitutional violation. The plaintiff's allegations are vague and do not specify what commissioner contacted the plaintiff or when such contact occurred. *See Twilley v. Riley*, 285 Fed. Appx. 717, 720 (11th Cir. 2008) (stating that "'vague and conclusory' allegation[s] [are] not

7

sufficient to meet the heightened pleading requirement for § 1983 actions") (citing *Gonzalez v. Reno*, 325 F.3d 1228 (11th Cir. 2003)).

Additionally, Alabama law provides that county commissioners cannot be sued in their individual capacities. *Smitherman v. Marshall County Com'n*, 746 So.2d 1001, 1004 (Ala. 2009) (citing *Cook v. St. Clair County*, 384 So.2d 1 (Ala. 1980)). They can only be sued in their official capacities. *Id.*   The plaintiff's complaint, however, did not state whether it was suing the individual commissioners in their official or individual capacities.   Therefore, individual defendants, David Seibert, Gary Daly, Gerald Barksdale, Bill Latimer, and Bill Davis are due to be dismissed from this action.

*Plaintiff Rogers' Equal Protection Claim is Due to be Dismissed*

"In order to prevail on an equal protection claim based upon the application of a facially neutral statute, it must be establish[ed] that: (1) the plaintiff was treated differently than similarly situated persons; and (2) the defendant unequally applied the facially neutral statute for the purpose of discriminating against the plaintiff." *Strickland v. Alderman*, 74 F.3d 260, 264 (11th Cir. 1996).   A "similarly situated" comparator is one who is similarly situated "in light of all the factors that would be relevant to an objectively reasonable governmental decisionmaker."   *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1207 (11th Cir. 2007).   Here, the plaintiff has

8

failed to identify a similarly situated quarry business.  The plaintiff briefly mentions crushed stone quarries throughout Alabama, but does not identify any company by name and does not identify any company located in Limestone County.  Complaint at ¶ 42.  *See GJR Investments, Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367-68 (11th Cir. 1998) ("Bare allegations that 'other' applicants, even 'all other' applicants, were treated differently do not state an equal protection claim; a complaint must attempt to show in some fashion that these 'other' applicants were situated similarly to the plaintiff"); *Prescott v. Florida*, 2009 WL 1059631, *3 (11th Cir. 2009) (affirming the district court's ruling that the plaintiff did not state an equal protection claim because of the plaintiff's failure to allege that similarly situated persons had been treated disparately).  For these reasons, the plaintiff's equal protection claim is due to be dismissed.

*Plaintiff Rogers' Due Process Claims Under the U.S. and Alabama Constitutions are Due to be Dismissed*

The plaintiff asserts that the quarry statutes violate its due process rights under the Fifth Amendment to the U.S. Constitution, made applicable to the states through the Fourteenth Amendment.  Complaint at ¶ 55.  The due process clause prohibits any government action that deprives a person of property without due process of law.  U.S. Const. amends. V & XIV.  To support its claim, the plaintiff states that the

9

statutes do not define what constitutes a "new" or "relocated" quarry, they contain no statement of public purpose, and they arbitrarily deprive the plaintiff of its property without due process of law.  Complaint at ¶¶ 53-55.  In its response brief to the motion to dismiss, the plaintiff argues that its complaint states a claim for a substantive due process violation since the quarry statutes were tailored to solely affect the plaintiff.  Plaintiff's Response Brief at 21.

In a substantive due process claim, if the statute does not implicate a fundamental right or target a suspect class, the court must apply rational basis scrutiny.  *Beaulieu v. Alabama Onsite Wastewater Bd.*, 2009 WL 692190, *4 (M.D. Ala. March 13, 2009) (citing *Romer v. Evans*, 517 U.S. 620 (1996)).  "A statute is constitutional under rational basis scrutiny so long as 'there is any reasonably conceivable state of facts that could provide a rational basis for the [statute].'"  *Id.* (citing *FCC v. Beach Comm'ns. Inc.*, 508 U.S. 307, 313 (1993)).  In this case, the right to operate a crushed stone quarry is not a fundamental right, nor does it concern a suspect class.  Therefore, rational basis scrutiny should be applied.  Defendants argue that the quarry statutes relate to concerns about the safety, property value, health, and water quality of the residents of Limestone County.  Defendants' Motion to Dismiss Brief at 10.  These concerns provide a rational basis for the quarry statutes, and such statutes are constitutional as applied to the plaintiff.  As a result, the

plaintiff's due process claim under the U.S. Constitution is due to be dismissed.  *See*

*Beaulieu*, 2009 WL 692190, *4 (dismissing the plaintiff's substantive due process

claim since the challenged statute regulating the installation of wastewater systems

was rationally related to promoting human and environmental health in Alabama); *see*

*also Villas of Lake Jackson, Ltd. v. Leon County*, 121 F.3d 610, 615 (11th Cir. 1997)

("There is no substantive due process 'takings' claim that would protect a specific

property right not already protected by the Takings Clause").

The plaintiff also asserts the same facts in support of its due process claim

under Article I of the Alabama Constitution.  Complaint at ¶¶ 66-70.  "[T]he right to

due process under the Alabama Constitution is violated when a statute, regulation, or

ordinance imposes restrictions that are unnecessary and unreasonable upon the

pursuit of useful activities in that they do not bear some substantial relation to the

public health, safety, or morals, or to the general welfare, the public convenience, or

to the general prosperity."  *State v. Lupo*, 984 So.2d 395, 405 (Ala. 2007).  Since the

court finds that the plaintiff's due process claim under the U.S. Constitution is due

to be dismissed, the plaintiff's due process claim under the Alabama Constitution is

also due to be dismissed.  *See City of Hoover v. Oliver & Wright Motors, Inc.*, 730

So.2d 608, 613 (Ala. 1999) (stating that the U.S. Supreme Court's interpretation of

the Due Process Clause in the Fourteenth Amendment to the U.S. Constitution can

influence the interpretation of the due process clause in the Alabama Constitution).

*Plaintiff Rogers' Takings Claim Under the U.S. Constitution and Inverse Condemnation Claim Under Alabama Law are Due to be Dismissed*

The plaintiff's takings claim under the U.S. Constitution and inverse condemnation claim under Alabama law are due to be dismissed because such claims are premature. The plaintiff states in its complaint that enforcement of the quarry statutes would deny the plaintiff all economic use of the Limestone Quarry property and would constitute a taking without just compensation in violation of the Fifth and Fourteenth Amendments to the U.S. Constitution. Complaint at ¶ 48. However, no determination has been made in this court or any other court or proceeding as to whether the quarry statutes apply to the plaintiff. "A Fifth Amendment [regulatory] takings claim is ripe for adjudication in federal court when the property owner meets two requirements: (1) he obtains a final judgment regarding the application of the ordinance and regulations to his property, and (2) he utilizes the procedures the State provides for obtaining just compensation." *Abusaid v. Hillsborough County Bd. of County Com'rs*, 2007 WL 2669210, *10 (M.D. Fla. 2007) (citing *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186, 194-95, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)).

Currently, the interpretation and enforcement of the quarry statutes is at issue

in this court and in the state court action[2] filed by the defendants.  Until the court decides whether the quarry statutes are applicable to the plaintiff, the plaintiff's takings claim and inverse condemnation claim are both premature.  *See Baldwin County v. Palmtree Penthouses, Ltd.*, 831 So.2d 603, 608 (Ala. 2002) (holding that the plaintiff's claims, including a claim for inverse condemnation, were not ripe since the plaintiff had not yet been denied a land-use certificate and all of the necessary permits to develop its land).

*Plaintiff Rogers' Declaratory Judgment and Injunctive Relief Claims Remain in This Case*

The plaintiff's declaratory judgment and injunctive relief claims are properly before the court.  The plaintiff asks the court to declare that the plaintiff's quarry is not "new" or "relocated" as such words are used in the quarry statutes, and thus rule that the statutes do not prevent the plaintiff from continuing to operate its quarry. Complaint at ¶ 57.  The plaintiff also asserts that the statutes are unconstitutional under Section 105 of the Alabama Constitution, and that the plaintiff has a vested right to operate a quarry on the property.  *Id.* at ¶¶ 58-59.  In the plaintiff's claim for injunctive relief, it seeks an injunction to prevent the enforcement of the quarry statutes against it.  *Id.* at ¶ 72.

---

[2] As mentioned previously, the state court action is now in federal court.

13

The defendants argue that the plaintiff's declaratory and injunctive relief claims should either be dismissed and/or consolidated with the claims pending in the companion federal case. Defendants' Motion to Dismiss Brief at 13. A federal court should not abstain from interpreting a state statute "'unless the statute is of an uncertain nature, and is obviously susceptible of a limiting construction.'" *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 237 (1984) (quoting *Zwickler v. Koota*, 389 U.S. 241, 251, and n.14, 88 S.Ct. 391, 397, and n.14, 19 L.Ed.2d 444 (1967)). Whether a quarry was "newly" created after the effective date of the quarry statutes is not ambiguous or uncertain, or uniquely defined by some unusual body of state law. Therefore, the plaintiff's declaratory judgment and injunctive relief claims are not due to be dismissed.

## V. Conclusion

Having considered the foregoing, and being of the opinion that the defendants' Motion to Dismiss or, in the Alternative, to Consolidate (doc. 9) is due to be granted in part and denied in part;

Defendants' Motion to Dismiss (doc. 9) is **GRANTED** with respect to the individual defendants, David Seibert, Gary Daly, Gerald Barksdale, Bill Latimer, and Bill Davis, as such defendants are dismissed from this action. Said motion is **GRANTED** with respect to plaintiff's: equal protection claim (Count I); takings

14

claim under the United States Constitution (Count II); inverse condemnation claim under Alabama law (Count III); due process claim under the United States Constitution (Count IV); and due process claim under the Alabama Constitution (Count V), as such claims are dismissed from this action.  Said motion is **DENIED** with respect to plaintiff's declaratory judgment (Count VI) and injunctive relief (Count VII) claims.

      **DONE** and **ORDERED** this the 30th day of July 2009.

                                                    _____

                                                 INGE PRYTZ JOHNSON

                                                 U.S. DISTRICT JUDGE